All right, the next case we'll hear is Alvarado-Paz v. Bondi, and Mr. Connors, we'll hear from you. Good morning, and may it please the Court. This Court has made it strikingly clear that when an immigration judge or the Board of Immigration Appeals analyzes a different particular social group than the one actually advanced, or refuses to consider altogether a particular social group that was properly preserved, then that is critical legal error requiring remand because it is an abuse of discretion. That is what occurred here. In this case, the Board of Immigration Appeals, in affirming the denial of my client's asylum, withholding, and protection under CAT claims, blatantly mischaracterized the particular social groups that she claimed membership in, wrongly stating that she raised two out of these four groups for the first time on appeal, when in fact she properly preserved her membership in these groups before the immigration judge, both in her submitted briefing as well as at her hearing. Under this Court's established precedence, this is prototypical reversible legal error requiring remand. Can you talk about the two groups separately because they present slightly different situations and start with the Salvadorian women? I understand the argument. There's undeniably the line in the BIA where she says this was raised for the first time on appeal. That was an error. The question is why it's not harmless, and here's the argument. I'm sort of transparent about it. The IJ addressed Salvadorian women, albeit in a footnote, but addressed Salvadorian women, and the BIA expressly adopted the IJ's findings and decision. In doing so, the BIA sort of accepted the IJ's reasoning, and so then even though it later says we're not considering this, it's already considered it. And so, yes, maybe that was a misstatement with respect to Salvadorian women, but it's a harmless one. Help me walk through that. Sure, Judge Richardson. I think the issue is here the Board did not expressly adopt the IJ's findings on these two groups. No, no, no, but what it says is we adopt and affirm the IJ's decision. And the IJ's decision included, I mean, it didn't say we adopt and affirm part of the IJ's decision or we adopt and affirm, like, everything but the footnotes. It said, and we sort of take agencies at their word, right? I mean, you know, when they say we're adopting and affirming the IJ's decision, we sort of take it to mean that that's what they're doing. Yes, Judge Richardson, but then the BIA went and supplemented that decision by mischaracterizing the groups and saying we declined to consider these two groups. Yeah, totally fair. That was an error, right? Yeah. But having already adopted and affirmed the IJ's decision, we look at the IJ's decision. We say over and over again, when the BIA adopts the IJ, we review the BIA and the IJ together, right? That's true. And so I guess I'm just having a little hard time sort of figuring out what I'm supposed to do when the agency said we adopt and affirm and then admittedly makes a mistake on the back end, but that's like, you know, they put a belt on by adopting and affirming and they messed up with the suspenders. I don't know why that's an error that requires me to send it back to say, all right, adopt and affirm the IJ's decision again so that we can move forward. Well, Judge Richardson, I think you identified the issue. The issue, the error here is not on the back end. It was on the front end. The identifying a particular social group is a gating issue. It's a threshold legal defect. Both the IJ decision and the BIA decision was based on nexus. Well, nexus is presupposed on properly identifying the particular social groups. So if you get the particular social groups wrong, that taints the nexus inquiry ab initio from the beginning. But that's an argument on the merits, right, which I understand, right? But that's saying, okay, fine, even if you're right about the Salvadorian women and the BIA adequately addressed it, there's a nexus problem. I understand that. But I understood your primary argument to be that the error was the failure to address Salvadorian women at all. And I guess what I'm not getting is a response to why the adoption of the IJ's decision shouldn't be treated as having addressed it. Well, to answer your question directly, Judge, we're not just penalizing them for failing to address Salvadorian women, but there's another group here, family members of witnesses to crime. Counsel, just stick with the Salvadorian women, of course, because I think they're two distinct characterizations here. So finish your response, if you would, to Judge Richardson, limit it to the Salvadorian women and then move on to the other group. I mean, the substantive response, Judge Richardson and Judge Agee, to Salvadorian women specifically is Salvadorian women and females viewed as property by virtue of their family status have different cognizability, different sorts of evidence that are probative of cognizability and of nexus. Females viewed as property by virtue of their family status are defined not just by gender, but also by domesticity. And so my client has presented record evidence that she was persecuted not just by her father. Bear in mind that the IJ decision and the BIA decision seems to be premised that her only persecutor was her father. Her father did beat her. Her father did murder her mother. But she also had another persecutor here, her father's foster brother, Jose Victorino. And my client presented record. Counsel, you agree as to that group as opposed to the Salvadorian women group that the BIA did address that. I do agree, but I'm making a roundabout point here that she was sexually abused by her father's foster brother. And so even if the IJ adequately tackled the particular social group of females viewed as property by virtue of their family status, that's the abuse and persecution she suffered from her father. But it is at least plausible and is at least conceivable that if this was remanded, she could muster alternative evidence that she was persecuted by her father's foster brother because she was a Salvadorian woman. I hope that makes sense, that there are different sorts of evidence that are probative of cognizability and nexus for those two groups. It seems like they overlap, but they are not necessarily coterminous. I thought your argument was a little different, which was the BIA says you didn't raise Salvadorian women, therefore we're not going to consider it, and that that in and of itself is error as opposed to anything else. That's true. I mean, I think there are several distinct procedural reasons, Judge Agee and Judge Richardson, for why this is a reversible legal error. I mean, one is the centrality of the particular social group analysis to my client's claim. This Court has recognized on several occasions that identifying a particular social group is integral, often integral and often dispositive to an asylum applicant's claim for relief. I mean, in Quintero, this Court characterized identifying a particular social group as a highly technical issue that often makes or breaks a claim. Indeed, the BIA and this Court's precedent establishes a high burden on people like my client to raise all of their particular social groups in the first instance and to exactly delineate the contours of those groups. My client met that burden, undoubtedly. We have pinpoint record citations for where she preserved her membership in not just Salvadoran women, but family members of witnesses to crime. And the BIA just whiffed on all of those. And it seems to me that if she has gone to the... Let me ask, if we're moving on past Salvadoran women, the way I read the BIA's opinion is they did consider family members of prosecutorial witnesses, but they didn't consider any other iterations that were added. Do you agree or disagree? That's accurate. And if you look at my client's briefing before the immigration judge and at the removal hearing, and I'll give you specific sites, Joint Appendix 208 for the briefing and Joint Appendix 170 for the hearing, she identifies her group... Counsel, even if we accept that these other groups were raised, they don't seem to be synonymous because you can be a prosecutorial witness without being a witness to a crime and you can be a witness to a crime without being a prosecutorial witness. So they don't... The briefing in certain parts and the papers filed below seem to kind of make a mash of this, but family members of prosecutorial witnesses I thought was the main group, and if these others are not synonymous, which they're not, then why should the BIA consider them? Judge Agee, I think you're entirely correct that they're not synonymous, and that's our whole point here. I mean, in the briefing my client submitted before the immigration judge and preserved before the Board of Immigration Appeals, she couched her membership in the alternative. So again, I'm transparent about this, right? So the rub I've got is this. So on JA 200, when she first raises the social group, right, you said it needs to be precise and exact, and she refers to it as prosecutorial witnesses. Then a couple pages later, she uses both prosecution witnesses and witness to crime, but frankly, reading it in the abstract, they seem to be talking about the same thing. And now you've come in, you're a very good lawyer, you've figured out that there's like a gap between these two formulations, but it seems odd for her to identify it as prosecution witnesses the first time she mentions the social group she's seeking, and then for the discussion to talk about being a prosecution witness but also witness of crime and to expect the agency to pull those apart and suggest she's raised not one social group related to crime, witness, prosecution, but in fact two or maybe even three distinct social groups. Help me understand what we're supposed to do, that the agency is supposed to take her brief and pull apart, not take the first representation of what her group is, but to take every different iteration of that group as a distinct social group that requires distinct analysis. Sure, Judge Richardson. I think the answer to that is, again, goes back to the exact delineation burden that she operates under. She has an obligation under this Court's precedent and BIA precedent to raise all the different groups that she brings in. And as long as she articulates them with exact delineation, with precision, then there is a concomitant burden on the part of the IJ to deal with those groups separately. But to do so, we typically think to be precise and exacting, you must identify that you're raising more than one social group, right? You don't get to say in the heading that, you know, is addressing a social group, I don't get to give seven different sentences that describe it ever so slightly differently and rely on the exact same evidence and the same, you know, underlying facts. And then when the IJ addresses four of the seven to say there's an underlying error because these three words were different in this example and this word was slightly different than that one and this word was possessive, the other one wasn't possessive, right? So there's got to be some line here where you don't get to sandbag by mentioning three very close, although literally distinct, social groups under one heading and suggest that the agency is supposed to pull that out and analyze them separately. If she had identified, I'm raising these three different examples, one's prosecution witnesses and one's witnesses of crimes, totally get that. But that's not what we have here, right? We've got sort of a hash of things and, you know, this is just the reality of things that are all part of the same section that are describing the same evidence and the same information. Yes, Judge Richardson, I take your point. I don't think we're being incredibly pedantic here. My understanding of the record is she raised those groups in the alternative, family members of prosecution witnesses or family members of witnesses to crime. She proffered a similar sort of evidence to sustain her membership. I mean, what would we say on, I mean, you know, looking at JA-208, like no suggestion there that, I mean, I guess she uses the word, you know, witness of crime, but at no point is there any suggestion, just frankly reading that, that these are alternative social groups, right? I mean, I just don't think that you can read that paragraph in good faith and say these are alternative arguments. I mean, we've all seen alternative arguments, right? But, like, this is sort of a mash of things that seems to be making a single argument. Judge Richardson, I agree. I mean, I think the only answer is the fact that there is a difference between family members of prosecution witnesses and family members of witnesses to crime has been revealed by the course of this litigation. The IJ penalized her for not being a member of, you know, family members of prosecution witnesses for what I think was a highly literal and perfunctory reason, that her child who witnessed the murder was never called to testify. And so that, to me, bolsters the reason why she needed to couch, which she did in the first instance, needed to couch that particular social group formulation in the alternative to capture the fact that you might have a very exacting IJ who makes an error of that kind. So this is what everybody should do, right? They should write these paragraphs that have, like, seven slightly different variations so that whatever the IJ says about that group, there's one that's, like, a little bit different. And so you sort of have a get-out-of-jail-free card, right? Like, you can always come back and say whatever reason was given, oh, but that reason didn't address this, like, slightly different variation on the social group that I identified. Judge Niemeyer, I see I'm out of time. Am I able to answer the question? Here's what I would say to you, Judge Richardson, if you're looking for a rule that, you know, to issue in this case, as long as an asylum applicant satisfies his or her burden to exactly delineate the contours of all of her groups in the first instance. That's what this Court says. That's black-letter law. As long as you're imposing that obligation on the part of an asylum applicant, then at the very least, the bare minimum is for the immigration judge and, by extension, the Board of Immigration Appeals to precisely characterize each one of those groups, even if there's overlapping evidence. I think that's the bare minimum from Quintero. It's the bare minimum of Alvarez-Lagos. It's the bare minimum of — With Judge Niemeyer's indulgence, what about if we went the other way? So tell me why, if you give, you know, three, I think the suggestion here is that there are three different variations on prosecution, witness, or witness to crime that you allege were raised below. Why don't we say that that just means that none of those are exactly delineated, right, because you've sort of made a hash of them? And so what we've got is instead of an exactly delineated PSG, what we instead have are, like, three, like, sort of slightly different delineations, and what we would say is, like, that's anything but exact. I understand your point, Judge Richardson, but I don't think — I don't think my client made a hash of them in the first instance. I think the BIA regulations give asylum applicants latitude to make the case for their — That's an aggressive statement. I've got the application here — I mean, the brief here, and it says — it heads the heading D, witnesses to crimes. But then the very first sentence, as discussed, membership of a family constitutes membership in a cognizable particular social group. In particular, the Fourth Circuit has found that family members of those who actively oppose gangs in El Salvador by agreeing to be prosecutorial witnesses could serve as a basis for grand recital. The whole discussion thereafter is prosecutorial witnesses. So I'm not sure that she wasn't particularizing that, and that was her only intent. Well, that's correct, Judge Niemeyer. That particular portion was family members of prosecutorial witnesses, but then at Joint Appendix 208, she makes the case for family members of witnesses to crime. No, no, that's 208. He's reading from 208. Yeah, that's true. That's literally reading from 208. And the next sentence talks about, you know, how — you know, the statement to the prosecutor's office, right? I mean, the party's reading is the very part that you think has so clearly raised, like, three distinct social groups as opposed to a general point that is specified with the in particular, right? I mean, it sort of seems like some clarity there. Judge Richardson, I take your point, but she offered evidence, record evidence, that she presented her daughter to testify against her father's foster brother. Her daughter witnessed the crime. And that's the evidence that she submitted. She said, based upon this evidence, I belong to either family members of prosecution witnesses or family members of witnesses to crime. It seems like a small difference, but the I.J. inappropriately capitalized on that difference and said, well, she never — she never testified at trial, so she couldn't be a prosecution witness. That bolsters the very reason why she's allowed under the BIA regulations and precedent to couch that group in the alternative. So I agree with you. An asylum applicant can't list 100,000 different particular social groups and try to needle down and find a nitpick. But that's not what occurred here. I mean, let's be honest. If you look at the BIA decision, it blatantly whiffed and got these two particular social groups wrong. It said that they had been brought on the first time on appeal when they hadn't. And in such cases, under Crespin, under Alvarez-Lagos, and under Quintero, that's a structural legal defect. It taints the nexus inquiry. It answers the wrong legal question. And it deprives this Court of a reasoned decision to affirm. This Court has said it will not speculate on agency reasoning. Thank you. Thank you. We've gone past here. We can — you have some rebuttal time. Ms. Chan. Good morning, Your Honors. May it please the Court, Linda Chang, on behalf of the U.S. Attorney General. And the Court should deny the petition for review in this case because substantial evidence supports the agency's finding that Petitioner failed to establish a nexus between the harm she suffered or fears and a protected ground. Because nexus is a dispositive finding, the agency did not need to reach Petitioner's other arguments with respect to asylum and withholding of removal. Now, turning to the PSG groups that Your Honors were discussing with counsel, as in every PSG case, we all recognize it is incumbent upon counsel to Petitioner to clearly delineate her PSGs before the IJ. In this case, it has been a moving target. As Your Honors have pointed out, in her trial brief and at her merits hearing before the IJ, Petitioner stated that she has four PSGs that she is pursuing. However, today, it appears that she may have five, she may have six. To the extent that she claims these are all exhausted, it does not appear from the substance of the argument, as Judge Niemeyer points out, that she has argued or developed any argumentation with respect to two of these alleged different PSGs. As we go through the history of her case, we see that in the trial brief, she claims that it's family members of prosecutorial witnesses before the IJ. Further on in the brief. Counsel, before you get into that, which might take up some time, let's start with the Salvadoran woman. Oh, sure. I think you conceded that that was raised before the IJ and that the BIA erred in saying that it was not. Correct, Your Honor. Correct?  And as Judge Richardson pointed out, the Board adopted and affirmed the IJ's decision, and therefore all the analysis that the IJ used with respect to. Right, but it seems illogical to me to say that the BIA could adopt something with respect to that group when it says that it was waived and not raised on appeal. I mean, how could it make that decision? This issue isn't raised, but we're going to decide, well, we've decided it anyway. It goes back to the fact that the Board adopted and affirmed the entire IJ decision. And so, therefore, to the extent that the IJ did analyze this group, Salvadoran women, and denied it on that basis, that is incorporated into the Board's decision. Its statement that this issue wasn't raised is, we just ignore that. Only to the extent that here it is completely harmless error because it fails for the same reasoning that the IJ used when the IJ analyzed the females viewed as property by virtue of their status in the family relationship PSG. So it has been. That may be true, but the problem I have with this is that the BIA has said for this one group, you didn't raise it, we're not considering it on appeal. And then you kind of come in through the back door and say, well, you adopted the whole IJ's opinion, so this part of the BIA's decision is what, dicta? It just seems illogical to me that the BIA could say there's an issue that doesn't exist on appeal, but we're deciding it anyway. I see what you're saying. However, Your Honor, we would still say that it's harmless error to the extent that the Board did not explicitly look at this one PSG because the analysis from the IJ's decision with regard to the other gender-based PSG flows into this discussion as well. So therefore, it applies equally to both. But to go back to, I mean, we often have instances where courts say this argument is waived, but to the extent it's not waived, we reject it. The challenge, which I take is sort of effectively how you think we should read the BIA's decision, right? So the Salvadoran woman is waived because it was raised for the first time, but by adopting the IJ's decision, we have rejected the argument. The challenge is we typically say expressly, like, yes, it was waived, but even if it wasn't waived, we reject it. And, like, that's not what the BIA did here, right? And so why wouldn't we sort of perhaps take the line that there's a sort of specific governs the general? There was a general adoption of the IJ's decision, but the specific waiver argument sort of overcomes that. Do you see what I'm saying? The waiver is very specific. The adoption is quite general. We tend to read documents by saying the specific governs over the general unless we've got some reason to think otherwise. Sure, Your Honor. But at the same time, because the analysis is the same for two of these gender-based PSGs, remand would be futile if that is what you're going towards. The discussion is already in the IJ's decision. All the analysis is already provided for you. So it is still a harmless error in this case. Let me ask you, Dee, how did the IJ treat, didn't the IJ treat Salvatorian women as subsumed in its discussion of the Salvatorian women who are, it collapsed the two. That's correct, because they were both gender-based and the IJ found that there was no nexus for that. And then in the appeal brief, it looks to me like the petitioner did the same thing. She listed both of them, but then she treated it with the very same discussion. That is correct, Your Honor. Yes. And so if they were collapsed, the BIA is doing nothing but taking the collapsed argument and addressing it, isn't it? I mean, the Salvatorian women was not isolated out in the brief raised by the petitioner. Correct, Your Honor. Moving back into the discussion regarding family members of prosecutorial witnesses versus family members of prosecutorial witnesses to crimes versus family members of witnesses to crimes. These alternative PSGs were not presented to the IJ and therefore unexhausted. To the extent the court finds them exhausted, it was harmless error again, because the board found that the IJ correctly applied the law to the evidence in determining that petitioner did not meet her burden of proof to demonstrate a nexus to a PSG or any other protected ground. Can you go back to the threshold question? What do I do about the heading on 208? It's pretty, I mean, the heading sort of identifies pretty clearly that what she's arguing about is the particular social group of family members of witnesses to crimes.  And that PSG, to the extent it is one, or at least that alleged PSG, was not addressed by the reasoning of the IJ, right? Because the reasoning of the IJ is limited to sort of prosecution witnesses. Correct. And so help me understand, like, why I don't just take the heading as like a pretty good sense of what she thought the PSG was? Okay, so two points on that. As Judge Niemeyer points out, that the rest of the argument, the actual substance of the argument, discusses prosecutorial witnesses, and it's all about how they are then a PSG. So that does not actually align with the heading. And if we are going by headings, we look at the brief to the board on JA 49, and we see that she has added another group, family members of prosecutorial witnesses, to crime, which is slightly different, again. But, again, the substance of the argument still relates back to being a prosecutorial witness. However, if we step back and look at the argument that she is making, all of these allegedly family-based formulations boil down to a group of one, petitioner herself, because Mr. Alvarado is targeting her for pursuing a homicide investigation and for publicly accusing him. Now, this is a personal dispute. There is no one else in these groups that petitioner now is arguing. Her other family members have not been threatened, have not been harmed. Several of her siblings live in the United States. One remains in El Salvador. And so as much as they try to rejigger the idea of what this family member of prosecutorial witnesses, witnesses to crime, whatever this may be called, it really still is a group of one that she is pushing, and that is not a PSG. Why can't we take her at her word and sort of group? She groups both social groups, blurs them together. She lists them in titles as alternatives. But in her discussion of Salvatorean women and Salvatorean women, et cetera, she has the very same discussion. And the IJ saw that and collapsed them together. And it seems to me basically she's focusing on a gender-based group with some definition, maybe more particularized. One's a subclass of the other. But the long and short of it, the agency pointed out that he, Fabian, exercised violence against the son who's not a woman and exercised violence against the child for giving food to the cat, excess food to the pet, which is not on account of her being a woman. And it seems to me that when she describes these things, she collapses them. And however the BIA or the IJ categorize them, it's fair based on her articulation. I mean, because they got the substance right. They didn't get the particular articulation right if you carve out these various phrases. But if you look at the discussion under every one of these headings where she had one or two, she really discusses one all the way through. And it's a blur. And with respect to prosecutorial witnesses, she talks about the nature of prosecution. And with respect to Salvatorean women, she talks about how she was subjected in the family and controlled and so forth. I don't get the distinction now that the BIA somehow erred in missing the point. It's hard to find a point. That was the thing, I think. Correct, Judge Niemeyer. And, again, that all goes to the substantive nexus finding, which deals with everything with regards to her claims for asylum and withholding of removal. And so, therefore, there is substantial evidence in this record to uphold the agency's denial of asylum and withholding of removal, as well as CAT, to the extent that you have further questions. Okay, thank you. I will rest for the reasons in our brief and discuss today. All right, Mr. Connors. Just to get my same question to you, I want to give you an opportunity to explain it. You probably would anyway. But it seems to me the way I read this record was that your client clearly identified two social groups, women and women who are controlled and whatever, and, on the other hand, women who witness crimes or are prosecutorial witnesses. But throughout her briefing and her arguments, she puts the two together, blurs them together, the arguments are together, because the substance is quite similar. One is really a subset of the other. And the IJ treated it exactly as that. It said the Salvadorian women in the footnote really is a broader class than the other one. And since it's excluding the other one, it wouldn't get to the Salvadorian women one. But in her brief to the BIA, she did the very same thing. In her prosecutorial witnesses, she said and, or, witnesses to crime and or. But then she discusses basically making the point that it's prosecutorial witness. And the same with the Salvadorian women. I just looked at that. And I don't see a difference of her argument would be Salvadorian women or Salvadorian women subject to control or ownership by the parents. One is a subset of the other. Now, if that's an accurate observation, it seems to me it's an accurate observation that she really didn't carve out one to the exclusion of the other. She blurred them. And the BIA really wasn't, didn't miss the point. It did discuss the more particularized gender category, which would have covered the other. Well, Judge Niemeyer, here's how I would approach that. I think you are undeniably correct that my client offered similar factual evidence in support of these two groups. But the fact of the matter is she delineated two separate groups. Except she didn't even in her argument. In her argument, she focused on the nature of prosecutorial, who testified with respect to women, the nature of the household and so forth. In other words, she wouldn't add one phrase more to go to the broader category, which is witnesses to crime on the one hand and the other is Salvadorian women on the other. And by not adding anything there, when the court, the BIA addresses the two particularized social groups, it seems to me of necessity knocks out the others. I'm not sure about that because I think the fact that these two groups are not coterminous, that in each case one is slightly more general to the other, it necessarily perforce bolsters the conclusion that there is certain evidence that might be prohibitive of her inclusion in the larger group that doesn't establish her membership in the more specific group. And that bolsters why this is a material issue. Her arguments didn't go there. It didn't go beyond the particularized group and neither did the IJ and neither did the BIA. I mean, the fact that we could hypothesize some argument that she could have made, she didn't make. It looks to me like every argument she made on the particularized social group would have been addressed by the generalized. And I'm talking about Salvadorian women versus Salvadorian women who are under control and I'm talking about witnesses to crime or prosecutorial witnesses to crime. My succinct answer to you is what I mentioned earlier to Judge Richardson. She offered evidence that it was not just her father who persecuted her in the conclave of her family, but that she was persecuted by her father's foster brother by being sexually abused as a Salvadorian woman. That's the sort of evidence that she offered in favor of her membership in a larger group that wasn't limited to the domestic status. So that's just an example there. I do want to take some time to judge AG's point because I think the government is fundamentally mischaracterizing what the BIA did in its decision. It did not just adopt and affirm the IJ's decision. It then went on and supplemented that analysis and in the course of doing so, mischaracterized my client's particular social groups and it erroneously said that she had administratively exhausted her remedies on that front. This Court has never held that you can use an erroneous claim of administrative exhaustion to bootstrap harmless error. That's not harmless error. As far as I'm aware. You got it backwards, right? So it's the erroneous exhaustion, right? Everybody agrees, at least for present purposes, that that was an error. The question is whether that error wipes out the adoption of the IJ, right? You've got sort of a specific adoption and I think what you're trying to have us read it as saying there's a carve out, right? When we say we expressly adopt, except for anything else we say, but we don't often speak that way, right? Often courts and agencies use sort of a belt and suspenders. They say, listen, we're giving you three reasons why you lose and if you find error with the third reason, it doesn't matter, right? Because you're going to lose on the other two grounds. You've got to show us that all three are wrong. And it seems like here the BIA gives two reasons why you lose, right? The second reason, the exhaustion point, at least with respect to the Salvadoran women, was wrong. Okay. But, like, that doesn't do anything to undermine the first reason that was given. Well, I think it does, Judge Richardson. I think if you read Quintero, if you read Crestman-Valladares, if you read Alvarez-Lagos, in each one of those cases this Court makes it clear that mischaracterizing the particular social group is itself prototypical clear legal error requiring remand. That is the lesson of the court. You didn't mischaracterize it, right? Because if my theory is right, and I acknowledge you just disagree with it, but they adopted the IJ's decision, and the IJ in the footnote, like, didn't mischaracterize what Salvadoran women were. You might think they made an error, but it wasn't like he said something other than Salvadoran women. Like, that's what the footnote says.  Respectfully, Judge Richardson, I think if a BIA decision says we adopt and affirm the IJ decision and then supplements it with analysis that mischaracterizes that decision and gets a fundamental core structural element of a claimant's asylum application wrong, that's reversible legal error under this Court's precedent. What statement are you pointing to? What are you pointing to in particular that the BIA said that was error? I'm pointing to the statement in the Board of Immigration Decision, I believe, on JA008 or 009, where it says that my clients raised Salvadoran women and family members of witnesses to crime for the first time on appeal, or specifically raised Salvadoran women for the first time on appeal and recasted on appeal family members of prosecution witnesses to family members of witnesses to crime, and then says we expressly decline to consider those two groups because they're administratively exhausted. That was wrong. This is a fundamental structural legal error. It could not get more integral to my client's claim than characterizing. So your point is, it's like, regardless, if you make that statement, that's a structural error. So there is no harmless review. So if, in fact, the BIA had said, we reject Salvadoran women for the following reasons, and we find Salvadoran women were raised for the first time on appeal, that would be a structural error in your view, such that even though it gave an explanation, that explanation we have to throw away. It's a structural error. I believe that's the only inference that can be drawn from Quintero, from Alvarez-Lagos, and Crespin-Valladares, as well as Cordova v. Holder. This court has been consistent on that front. Any mischaracterization of the briefing you think is structural and thus, like, I mean, that seems like a pretty remarkable line. I mean, I understand maybe that's where you've got to go. But that seems like a pretty remarkable line to draw, to say, you know, any agency decision that mischaracterizes a petitioner's briefing is a structural error not allowing any harmless error review. Not its briefing. Any time a Board of Immigration Appeals decision mischaracterizes a client's particular social group that he or she has properly preserved, that's the only inference that can be drawn from Crespin, from Alvarez-Lagos, and from Quintero. It is itself legal error. Thank you. Thank you very much. We'll come down to Greek Council and take a brief recess. Oh, I just want to explain. Judge Agee would love to shake your hands too, but he's remote, so we'll do it on his behalf. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, G. Steven Agee, Julius N. Richardson